## EMERY DAVIS AND ANOTHER v. MELBA E. DAVIS, EXECUTRIX OF THE WILL AND ESTATE OF BURTON F. DAVIS, AND ANOTHER.

196 N. W. 2d 473.

March 31, 1972—Nos. 43324, 43325.

*Babcock, Locher, Neilson & Mannella, James M. Neilson,* and *John M. Burke,* for appellants.

*Ensign & Ensign, Baudler & Baudler,* and *William J. Baudler,* for respondents.

*Johnson, Thompson, Spring & Klaverkamp* and *John Parsinen,* for The Prudential Insurance Company of America, amicus curiae.

*Russell W. Lindquist, Duane E. Joseph, Loren R. Knott, Bruce W. Burton, Thomas S. Erickson, Robert A. Heiberg,* and *David Graven,* amici curiae.

Heard before Knutson, C. J., and Otis, Peterson, Todd, and Mason, JJ.

OTIS, JUSTICE.

The issue raised by this appeal is whether an acceleration

clause in a mortgage requires the mortgagor to tender the entire principal balance in order to reinstate the mortgage under Minn. St. 580.30. The trial court held such tender necessary and we reverse.

The parties have stipulated to the facts. Two mortgages are involved, in both of which plaintiffs, Emery Davis and Clarice Davis, are mortgagors. In the mortgage executed in 1958, Burton F. Davis, now deceased and succeeded by Melba E. Davis, executrix, was mortgagee. In the mortgage executed in 1967, Loren L. Davis, now deceased and succeeded by his executor, Floyd E. Ensign, was mortgagee. Under the 1958 mortgage, a principal installment of $300, due in December 1970, and interest in the sum of $496 became delinquent. Under the 1967 mortgage, three principal installments of $500 each became delinquent in March 1968, March 1969, and March 1970, and an interest installment amounting to $1,800 became delinquent in March 1970. The representatives of each mortgagee declared the entire balance of his mortgage payable under an acceleration provision. The mortgagors tendered only the delinquent installments referred to, and the tenders were declined. Thereupon, foreclosure proceedings were commenced. These actions seeking to enjoin the foreclosures followed.

The trial court, relying on the general rule cited in 55 Am. Jur. 2d, Mortgages, §§ 371, 374, held:

"* * * [O]nce the election to accelerate the entire principal due and payable was exercised by the mortgagees, the amount actually due thereon was the entire balance plus accrued interest. The mortgagor after exercise of the acceleration provision in the mortgage could not avail himself of the provisions of M.S.A. Sec. 580.30."

The rule elsewhere is as the trial court stated. Crawford v. Houser, 115 Neb. 62, 211 N. W. 165 (1926); United Benefit Life Ins. Co. v. Holman, 177 Neb. 682, 130 N. W. 2d 593 (1964); Metropolitan Bldg. & Loan Assn. v. Weinberger, 67 N. D. 627,

275 N. W. 638 (1937); Graf v. Hope Bldg. Corp. 254 N. Y. 1, 171 N. E. 884, 70 A. L. R. 984 (1930). Minn. St. 581.07, governing foreclosures by action, which has been the law since territorial days, permits the mortgagor to bring into court at any time before the judgment of sale "the principal and interest due, with costs" and thereby secure dismissal of the proceedings.[1] This appears to be language similar to that contained in the statutes construed in some of the cases cited above.

However, the statute we are here construing is unique. It was adopted in 1923 in response to hardships experienced by mortgagors resulting from the depressed economic conditions of the times. The statute applies both to foreclosures by action and by advertisement and permits the mortgage to be "reinstated" by the payment of "the amount actually due thereon and constituting the default actually existing in the conditions of the mortgage at the time of the commencement of the foreclosure proceedings * * *."[2] We are of the opinion and hold that the use

---

[1] Minn. St. 581.07 provides: "When an action is brought for the foreclosure of a mortgage on which there is due any interest, or any portion of the principal, and there are other portions to become due subsequently, the action shall be dismissed, upon the defendant bringing into court, at any time before the judgment of sale, the principal and interest due, with costs. If, after such judgment of sale, the defendant brings into court the principal and interest due, with costs, the action shall be stayed; but the court shall enter judgment of foreclosure and sale, to be enforced by a further order upon a subsequent default in the payment of any portion of the principal or of interest thereafter to become due."

[2] Minn. St. 1969, § 580.30, provided in full: "In any proceeding for the foreclosure of a real estate mortgage, whether by action or by advertisement, if at any time before the sale of the premises under such foreclosure the mortgagor, the owner, or any holder of any subsequent encumbrance or lien, or any one for them, shall pay or cause to be paid to the holder of the mortgage so being foreclosed, or to the attorney foreclosing the same, or to the sheriff of the county, the amount actually due thereon and constituting the default actually existing in the conditions of the mortgage at the time of the commencement of the foreclosure proceedings, including insurance, delinquent taxes, if any, upon

of the words "actually due" and "the default actually existing" was intended by the legislature to permit reinstatement by the payment of only what was delinquent, plus the costs set out in the statute, without requiring the accelerated principal to be tendered.

While there is no case precisely in point in Minnesota, we had occasion to deal with a similar problem affecting contracts for deed in Needles v. Keys, 149 Minn. 477, 184 N. W. 33 (1921). There, as here, the contract had an acceleration clause. The vendee tendered only the installments in default, and the issue was whether, after the vendor declared the entire balance due, the vendee was entitled to equitable relief. In considering what is now Minn. St. 559.21, we said (149 Minn. 479, 184 N. W. 34):

"* * * While the statute must be given full effect, its provisions must be construed in the light of the legislative purpose to afford the vendee an opportunity to save and reinstate his equitable rights by removing the default, and, if the meaning be doubtful, that construction must be adopted which militates against a forfeiture."

We then held that the words "conditions in which default has been made" permitted reinstatement by the vendee's performing only those conditions without being required to pay the accelerated balance. Applying the principles of the Needles case, it occurs to us that "the amount actually due" and "the default actually existing" specify only delinquent payments as distinguished from amounts which otherwise would not actually be

the premises, interest to date of payment, cost of publication and services of process or notices, attorney's fees not exceeding $100, together with other lawful disbursements necessarily incurred in connection with the proceedings by the party foreclosing, then, and in that event, the mortgage shall be fully reinstated and further proceedings in such foreclosure shall be thereupon abandoned." The provision with respect to attorney's fees was amended by L. 1971, c. 833, to provide for $150 or one-half of the fees authorized by § 582.01, whichever is greater.

due but are rendered due by the mortgagee's invoking his acceleration clause.

There is also merit in the argument that to give the acceleration clause effect by requiring the full principal to be tendered in order to reinstate the mortgage would not, as the statute suggests, "reinstate" the mortgage, but would in fact "satisfy" it.

Although our legislature has not been as precise in expressing its intent as those in California and Oregon, where similar statutes [3] contain a provision that the mortgagor may reinstate the mortgage by the payment of the amounts due "other than such portion of principal as would not then be due had no default occurred," we believe that our construction of legislative intent is fortified by the measures which are included to restore both mortgagor and mortgagee to the status quo ante. The mortgagee is made whole by the requirement that the mortgagor pay not only what is in default in principal and interest, but in addition insurance, taxes, publication costs, costs of service, and attorney's fees, now increased to $150. These expenses would appear to be sufficient to deter and discourage mortgagors from assuming a casual attitude toward defaults and delinquencies. The judgment of the trial court is accordingly reversed.

Reversed.

---

[3] Cal. Civil Code, § 2924c (West Supp. 1971); Ore. Rev. Stat. § 86.760 (1971).