Raymond OLEISKY, et al., Appellants,

v.

MIDWEST FEDERAL SAVINGS AND LOAN ASSOCIATION OF MINNEAPOLIS, Respondent.

No. CX–86–1041.

Court of Appeals of Minnesota.

Dec. 30, 1986.

Review Denied Feb. 18, 1987.

Richard G. Nadler, St. Paul, for appellants.

William S. Borchers, Minneapolis, for respondent.

Heard, considered and decided by WOZNIAK, P.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

NIERENGARTEN, Judge.

Appellants Oleiskys had a mortgage with Midwest Federal Savings and Loan Association (Midwest Federal). In 1980 the Oleiskys' filed a Chapter 13 plan in U.S. Bankruptcy Court. A later attempt by Midwest Federal to lift the automatic foreclosure stay was denied because the bankruptcy court found the bank's interests were protected sufficiently. In 1984 the Oleiskys filed a Chapter 7 bankruptcy petition and Midwest Federal once again filed to obtain relief from the automatic stay. The hearing in this motion was so close to the scheduled discharge date that the stay was allowed to remain in effect until the day of discharge and the court did not rule on the motion.

In the spring of 1985 Midwest Federal began foreclosure proceedings. The Oleiskys brought an action to enjoin the foreclosure and for a declaratory judgment on whether Midwest Federal was entitled to attorney's fees for the bankruptcy proceedings. The trial court granted attorney's fees resulting from the bankruptcy proceedings plus foreclosure fees and costs to Midwest Federal. The court also denied the Oleiskys' motion for attorney's fees under Minn.Stat. § 549.21 (1984) providing for the recovery of fees in a "bad faith" suit. The Oleiskys appeal.

## FACTS

In September of 1977 Raymond and Carolyn Oleisky borrowed $45,000.00 from Midwest Federal, securing the loan with a home mortgage. In September 1980 appellants filed a Chapter 13 plan in the U.S. Bankruptcy Court and included Midwest Federal as a creditor to be paid outside the plan. Payments on the mortgage were made regularly until February 1982 when Raymond Oleisky was injured in a work-related accident.

In October 1983 Midwest Federal asked the U.S. Bankruptcy Court to lift the automatic stay so that it could begin foreclosure proceedings. The court found, that Midwest Federal was adequately protected since the balance on the mortgage was $43,000 and Midwest Federal conceded the home was worth at least $95,000. The bankruptcy court specifically declined to decide whether Midwest Federal had the right to add certain costs and attorney's fees to the debt. The court gave the Oleiskys one year to pay the arrearages and said they had to remain current on all payments due under the mortgage. The Chapter 13 proceeding ultimately was dismissed because of a material default in the plan and Midwest Federal again began foreclosure proceedings.

The Oleiskys filed a Chapter 7 bankruptcy proceeding which imposed a new automatic stay. Midwest Federal again moved for relief from the stay in order to foreclose. The hearing was delayed and the stay remained in effect until the discharge date of January 7, 1985. No disposition was made on attorney's fees. In July 1985 the Oleiskys filed their request for a restraining order on the foreclosure and declaratory judgment on the attorney's fees.

The trial court issued a temporary restraining order on Midwest Federal's fore-

closure action conditioned on the payment of $3,977.88 which was due on the mortgage at that time, exclusive of any attorney's fees. Midwest Federal had refused to accept partial payments from the Oleiskys beginning in March of 1985.

The trial court awarded Midwest Federal

| | |
|---|---|
| $2,414.73 | Attorney's fees and costs incurred in the Chapter 13 bankruptcy proceeding. |
| $ 647.45 | Attorney's fees and costs incurred in the Chapter 7 bankruptcy proceeding. |
| $ 497.20 | Attorney's fees and costs incurred in the foreclosure proceeding. |
| $3,559.38 | Total |

The Oleiskys' motion for costs and fees based on Minn.Stat. § 549.21 was denied for lack of evidence showing that Midwest Federal acted in bad faith.

## ISSUES

1. Is the mortgagee entitled to attorney's fees and costs incurred as a result of the mortgagor's bankruptcy proceedings?

2. Does Minn.Stat. § 582.01 limit the amount of attorney's fees to be recovered?

3. Are appellants entitled to attorney's fees because of bad faith on the part of respondents?

## ANALYSIS

### I

Generally attorney's fees are not awarded without a contractual or statutory basis. *Material Movers, Inc. v. Hill*, 316 N.W.2d 13, 18 (Minn.1982); *Cherne Industrial, Inc. v. Grounds Associates, Inc.*, 278 N.W.2d 81, 96 (Minn.1979).

The promissory note provides:

If suit is brought to collect this Note, the Note holder shall be entitled to collect all reasonable costs and expenses of suit, including, but not limited to, reasonable attorney's fees.

The mortgage provides:

7. *Protection of Lender's Security.* If borrower fails to perform the covenants and agreements contained in this Mortgage, or *if any action or proceeding is commenced which materially affects*

*Lender's interest in the property, including*, but not limited to, eminent domain, insolvency, code enforcement, or arrangements or *proceedings involving a bankrupt* or decedent, then Lender at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums and take such action as is necessary to protect Lender's interest, including, but not limited to, disbursement of reasonable attorneys fees and entry upon the Property to make repairs. (emphasis added.)

The mortgage note clearly addresses the type of fee in dispute here and lifting of the stay would be the first step in foreclosing the mortgage and collecting on the note.

The Oleiskys also claim that Midwest Federal is not entitled to any attorney's fees because Midwest Federal was not the prevailing party in its action to lift the stay. The "prevailing party" condition applies only to fee awards authorized by statute and not those authorized by contract. There is nothing in the mortgage which requires the bank to be a prevailing party. *See Twin City Federal Savings and Loan Association v. Cochrane*, 295 N.W.2d 87, 89 (Minn.1980) (attorney's fees in "separate and independent" proceedings were allowed).

Finally, the Oleiskys assert that Midwest Federal's interest in the property was not "materially affected" by the bankruptcy filing because the bank was adequately protected by the large amount of equity in the home. In addition to the eventual full payment of the loan, the bank's interest in the property included receiving and having available for use, periodic mortgage payments. Payment in the future is not the equivalent of payment now. *In re Murel Holding Corp.*, 75 F.2d 941, 942 (2nd Cir.1935); *see also In re Briggs Transportation Co.*, 780 F.2d 1339, 1349 (8th Cir.1985). At the time of the first bankruptcy proceeding the Oleiskys were almost a year behind in their mortgage payments. Adequate protection is

not defined in the Bankruptcy Code. It is a flexible concept designed to balance the interests of both the debtor and the creditor. *In re Briggs Transportation Co.*, 780 F.2d at 1349. The relief from stay provisions allows the creditor to avoid incurring economic penalties due to undue delay in access to its assets. *Id.* at 1343. Although the bankruptcy judge eventually found Midwest Federal to be adequately protected, we cannot say that the bank's interests were not materially affected, nor that the bank was unreasonable in requesting relief from the stay.

## II

The Oleiskys claim that attorney's fees must be limited to the statutory amounts provided by Minn.Stat. § 582.01 (1984) and that the fees must be reasonable. If the two bankruptcy proceedings are construed as part of foreclosure then the recovery of attorney's fees would be limited to $520.00.

The trial judge found that attorney's fees are limited by statute only for actions relating directly to actual foreclosure. We concur. The amount claimed for foreclosure proceeding by Midwest Federal was $497.20, which is within the statutory limit. *See Twin City Federal Savings and Loan Association v. Cochrane*, 295 N.W.2d 87, 89 (Minn.1980) (court held that the mortgagee was entitled to both statutory fees for foreclosure and additional fees for services rendered under a separate provision of the mortgage).

## III

The Oleiskys request attorney's fees under Minn.Stat. § 549.21 (1984) because of bad faith on the part of Midwest Federal in bringing the actions to lift the bankruptcy stays. The trial court found Midwest Federal's efforts were reasonable and the Oleiskys have offered no evidence to show that the claims were pursued in bad faith.

## DECISION

The attorney's fees awarded in the proceedings for lifting the bankruptcy stay were agreed to by appellants through their contract with the bank. There was no prevailing party requirement for awarding attorney's fees. The attorney's fees for foreclosure also were provided for by the contract and are within the statutory limits of Minn.Stat. § 582.01 (1984). There was no evidence of any bad faith on the part of Midwest Federal. The trial court is therefore affirmed.

Affirmed.

WOZNIAK, Judge (dissenting).

I respectfully dissent.

## I.

The majority opinion allows a lender to make a unilateral decision to add additional attorney's fees and costs to the borrower's arrearages under the guise of "protection of lender's security," unlawfully avoiding judicial and statutory protections.

Such a decision emasculates a century-old public policy of both the legislature[1] and the courts to protect financially-distressed homeowners and farmers from acceleration of the debt and to guarantee reinstatement of the mortgage, at any time

---

1. This legislative policy was most recently expressed in Minn.Stat. § 583.01 (1984):

    [T]he number of unemployed persons in this state has reached the highest level since the Depression of the 1930's; that farm commodity prices are below the break-even point for the cost of production; that the number of mortgage loans currently in default due to the unemployment of the principal wage earner has reached critical levels; and that by reason of these conditions and the high rates of interest on mortgage loans, many of the citizens of this state will be unable for extended periods of time, to meet payments of taxes, interest, and principal of mortgages on their properties and are, therefore, threatened with loss of their real property through mortgage foreclosure, contract termination, and judicial sales. The legislature further finds that these conditions have resulted in an emergency of a nature that justifies and validates legislation for the extension of the time prior to foreclosure and execution sales and for other relief.

    *Id.*

prior to the foreclosure sale, upon payment of arrearages and statutory attorney's fees and costs.

Over a hundred years ago, Justice Cornell stated Minnesota's policy in this regard in *Ferguson v. Kumler*, 27 Minn. 156, 159, 6 N.W. 618, 619 (1880), in an action involving an attempt to execute a judgment:

> The law originated in the wise and humane policy of securing to the citizen, against all the misfortunes and uncertainties of life, the benefits of a home, not in his interest, or, if a married man, of himself and his family alone, but likewise in the interest of the state, whose welfare and prosperity so largely depend upon the growth and cultivation among its citizens of feelings of personal independence, together with love of country and kindred—sentiments that find their deepest root and best nourishment where the home life is spent and enjoyed. Its leading purpose is to exempt from forced sale a homestead—the place made such by choice, residence, use and occupancy of the owner as a home, including, as its necessary incidents, the dwelling-house and its appurtenances, and the land thereto belonging.

*Id.*

> The policy of the law is to protect the homestead, to preserve the homestead for the family even at the sacrifice of just demands. *In no manner does the statute yield to the demands of equity in favor of third parties.*

9A Dunnell Minn.Digest *Homestead* § 4193 (3d ed. rev. 1977) (emphasis added) (citations omitted).

## II.

### Additional Facts

The record is inadequate and confusing. Neither Gill Companies, as the assignees of Midwest, nor the Oleiskys ever knew the exact amount of the arrearages at any specific time because of inaccurate bookkeeping and late posting of payments, in some cases as much as three months late. Although the Oleiskys requested an accounting, none was provided. Additional facts, such as are available, are helpful.

Payments due under the note are $362.09 monthly, plus penalty for late payments.

Midwest, by its California counsel, brought its first motion to lift the Chapter 13 stay because of the Oleiskys' mortgage arrearages of $2,603.07 and because of its allegations of inadequate protection.

Yet, at the hearing, Midwest did not dispute that the equity in the homestead is approximately $52,000, or over 50% of its market value.

The bankruptcy court denied Midwest's motion, stating:

> I *find* that Midwest Federal *is adequately protected.* The parties agree that the approximate balance due on the mortgage is $43,000.00. Although no evidence was introduced, the debtors allege the property to be worth approximately $95,000.00, and Midwest Federal *conceded* that there was *substantial equity* in the property. Thus, it is clear that *whatever happens,* Midwest Federal *will ultimately be paid its entire principal and interest,* including interest which is accruing. While Midwest Federal argues that it is somehow entitled to the time value of its money which it is losing as a result of delay I think I have adequately dealt with that issue earlier in *Lend Lease v. Briggs Transportation Company* [35 B.R. 210], Adversary No. 3–83–0235 (November 10, 1983).

(Emphasis added.)

The attorney's fees and costs charged by California counsel for this unsuccessful motion were $2,414.73 on arrearages of $2,603.67. The record is unclear as to when the Oleiskys knew of this charge.

The bankruptcy judge declined to address the attorney's fees issue, stating:

> Midwest Federal also claims a right to add certain costs and attorney's fees to its debt. I do not feel that I need to face those as a part of these proceedings and explicitly do not. At some point outside of these proceedings, it may be that the debtors and Midwest Federal will have to

resolve the issue of whether those costs and attorney's fees can properly be added to the debt of Midwest Federal.

Because of Mr. Oleisky's injury, surgery, and rehabilitation, he was unable to work and unable to consummate the Chapter 13 plan; the Oleiskys were forced to file a Chapter 7 bankruptcy on or about October 1, 1984. The automatic stay under Chapter 7 is only 90 days; but, on November 5, 1984, Midwest filed a second lift-stay motion. The pleadings were identical to the pleading filed for the first stay, i.e.:

> on the grounds that absent this Court's Order allowing this secured Creditor to proceed with the pending foreclosure this Creditor's security *will be significantly jeopardized and/or destroyed,* that there *appears to be insufficient equity* with respect to the subject property, and that this Secured Creditor is *not adequately protected.*

(Emphasis added.) This motion, however, *further alleged* that Oleiskys "owed at least $3,064.73" in attorney's fees and $4,039.68 "representing monthly payments due from March 1984 through November 1984." The total amount due, according to the motion, was $7,104.41. Yet, exhibits of cancelled checks clearly proved that at the time the second motion was brought, the Oleiskys had paid $4,510, representing payments in April, May, June, September, and October. Furthermore, the Oleiskys paid $500 in December 1984 and again in January 1985.

After the Oleiskys' discharge in Chapter 7 bankruptcy in January 1985, Midwest refused any further payments and returned at least three checks, each in the sum of $500, and issued a "final notice" on January 7, 1985 indicating approximately $1,000 arrearages, plus $3,072.18 for attorney's fees, as the total to be paid by April 7, 1985 *to reinstate the mortgage.*

Subsequently, in March 1985, Midwest increased the claimed arrearages to $7,225.73, reflecting payments due from June 1984 through March 1985 totaling $4,840 and attorney's fees totaling $3,072.22. Midwest again revised this figure for the third time in April 1985, and stated that $4,583.13 was due, of which $1,936 was for payments due from December 1984 through March 1985 and attorney's fees of $3,072.18.

No copy of the printed notice of foreclosure was included in the record nor any new copy of the final notice, if any, sent. Although it now appears the Oleiskys were two mortgage payments behind, the confusion generated by late postings of received payments and by Midwest's letters made it difficult for the Oleiskys to know what, if any, delinquencies Midwest claimed. At trial, because of the confusion surrounding the mortgage arrearages, counsel for Midwest conceded the Oleiskys may have been only *one* mortgage payment delinquent.

The trial court made no determination of mortgage arrearages. The trial court only determined that Midwest was entitled to recover contractual attorney's fees based on the terms of the mortgage, plus additional statutory foreclosure fees, for a total of $3,569.38 because "Midwest was only attempting to protect its interest as outlined in the mortgage." It further ordered the attorney's fees to be "secured by the lien of Midwest Federal's mortgage."

## III.

**The trial court erred in determining that the lift-stay proceedings were necessary to protect Midwest's interest in the property.**

Both the promissory note and the mortgage provide for reasonable attorney's fees.[2] Specifically, the mortgage provides:

> 7. *Protection of Lender's Security.* If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced *which materially affects Lender's interest in the Property, in-*

---

2. We need not address the issue of the legal differences in a suit on the note or a suit on the mortgage.

*cluding * * * arrangements or proceedings involving a bankrupt * * *,* then Lender at Lender's option, * * * may make such appearances, *disburse such sums* and *take such action* as is *reasonably necessary to protect Lender's interest,* including * * * disbursement of *reasonable* attorney's fees * *.

(Emphasis added.)

### A. *Reasonableness of the Action.*

The mortgage requires that any disbursements of attorney's fees be "reasonably necessary to protect lender's interest" and that the bankruptcy proceeding "materially affect that interest." The contractual language does not, however, allow fees for the unsuccessful lift-stay proceedings.

Midwest's motion was based on its claim that its security would be significantly jeopardized. In view of the acknowledged $53,000 equity and the bankruptcy judge's findings, however, it is not only clear error, but strains the bounds of plausibility to find that the lender's security was jeopardized. As the bankruptcy judge implicitly held, arrearages are not to be equated with "inadequately protected."

The majority also argues that the "time value of money" demonstrates the reasonableness of the creditor's action. This argument lacks merit because the issue was not raised in the trial court by pleadings or argument, not relied upon by the trial court, and rejected by the bankruptcy court. This proposition cannot be used to prop up the reasonableness of the creditor's action when the creditor was clearly pursuing the foreclosure rather than attempting to collect additional interest during the automatic stay under *Briggs,* 780 F.2d 1339 (8th Cir.1985). Further, the *Briggs* holding is inapplicable here because the bankruptcy court has discretion to impose additional interest fees, and, even then, only to Chapter 11 business reorganizations.

The majority's position clearly underscores the various types of ethereal financial concepts which can be argued unilaterally to attempt to justify, under the guise of "adequate protection" of lender's security, additional attorney's fees and costs to be added to the unsuspecting and unsophisticated homeowner's arrearages which must be paid to reinstate the mortgage.

Our supreme court, in its wisdom, anticipated this when it stated in *Jadwin v. Kasal,* 318 N.W.2d 844 (Minn.1982):

Requiring the mortgagor to underwrite all of the bank's legal actions taken with respect to the mortgagor's property would encourage ill-considered litigation and farfetched claims by the bank and discourage the mortgagor from challenging the liens claimed by subcontractor and materialmen.

*Id.* at 848.

Further, the property comes under the homestead exemption to the Bankruptcy Act and the bankruptcy proceedings are therefore not a threat to the bank's security.

### B. *Reasonableness of the fees.*

In addition to the unreasonableness of the actions taken, Midwest's fees were unreasonable. The record indicates that lift-stay motions in bankruptcy court are handled on a fairly routine basis, which should not generate high fees, particularly when both motions were prepared from the identical form. Moreover, Gill conducted legal proceedings with counsel from California which added to the cost and confusion. California counsel prepared the motions, and charged $2,414 for the first motion. For the second motion hearing, local counsel appeared and charged California counsel $150, while California counsel charged $657.49.

In mechanic's lien cases, the supreme court has noted that a large fee is not necessarily an unreasonable fee. *Obraske v. Woody,* 294 Minn. 105, 109–10, 199 N.W.2d 429, 431 (Minn.1972). In *Asp v. O'Brien,* 277 N.W.2d 382 (Minn.1979), however, the Minnesota Supreme Court determined that for a mechanic's lien of $3,850, the trial court's award of attorney's fees in the amount of $2,400 was inappropriate,

and reduced the award of attorney's fees to $1,000, stating:

> Although we do not believe that the fees awarded were excessive, either in terms of the number of hours billed or the amount charged per hour, we are not inclined to allow the award of the full amount, *particularly where the amount of the lien recovered is small in comparison to the attorney's fees assessed.*

*Id.* at 385 (emphasis added). Similarly, in this case, even if the hours billed or the amount charged per hour were reasonable, as to the first motion hearing, it is inappropriate for the trial court to award fees of $2,414 upon arrearages of $2,603.

### C. *Statutory Limitations on Fees.*

Even if the action and fees billed were reasonable, attorney's fees charged for any action undertaken by the mortgagee in an effort to foreclose a mortgage are limited by Minn.Stat. § 582.01, subd. 1 (1984). In section 582.01, the legislature set limits on attorney's fees which may be claimed in foreclosure in order to protect the unwary and unsophisticated homeowner. The legislature with clarity and precision has determined what can be charged. This was done to prevent any deviation and to thwart any circumvention by the whim, caprice, or greed of a lender.

The majority suggests that the statute does not limit the amount of attorney's fees chargeable for the lift-stay motions in this case, relying on *Twin City Federal Savings & Loan Association v. Cochrane,* 295 N.W.2d 87 (Minn.1980). The reliance is misplaced. In *Cochrane,* the supreme court held that the bank was entitled to additional attorney's fees, in excess of the maximum permitted by statute, for services performed to enforce an assignment of rents. The court's holding was based on two facts. First, both the mortgage and security agreement and the assignment of rents in *Cochrane* authorized the receiver to apply the rents toward the lender's rea-

sonable attorney's fees incurred in enforcing the assignment of rents. *Id.* at 89. Thus, there was *express* contractual authority for the fee award, which we do not have here.

Second, *Cochrane* held that the bank was entitled to the fees above the statutory maximum because the trial court expressly found "the statutory receivership to be separate and independent from the foreclosure by advertisement." *Id.* Here, the lift-stay proceedings were not "separate and independent from the foreclosure by advertisement," but were commenced as a necessary preliminary to the foreclosure action.[3] Since the lift-stay motions were an integral part of foreclosure, the bank is limited to the maximum attorney's fees permitted by statute in foreclosure proceedings.

## IV.

**The procedure sanctioned herein violates public policy, and denies a homeowner procedural and substantive due process.**

### A. Reinstatement prior to sale.

A homeowner under Minn.Stat. § 580.30 (1984) may reinstate a mortgage at any time prior to the sale by paying to either the holder of the mortgage, his attorney, or the sheriff the amount actually due on the mortgage and constituting the default actually existing under the conditions of the mortgage at the time of the commencement of the foreclosure proceedings, interest to the date of payment, cost of publication, service fees, and attorney's fees not exceeding the greater of $150 or one-half of the attorney's fees authorized by section 582.01. The statute requires the mortgagee to abandon foreclosure proceedings when arrearages are paid.

The mortgagor's right to reinstate is absolute, notwithstanding acceleration. *Davis v. Davis,* 293 Minn. 44, 46–47, 196 N.W.2d 473, 475 (1972). The *Davis* court

---

**3.** Midwest's arguments are inconsistent. On the one hand, it argues the activities to lift the stay were necessary to proceed with the foreclosure. At the same time, it argues that the clause applicable to the stay-lifting activity is separate from foreclosure and thus not limited by statute. Midwest cannot have it both ways.

also notes the reinstatement statute was "adopted in response to hardships experienced by mortgagors resulting from the depressed economic condition of the times," *id.* at 46, 196 N.W.2d at 474, thus implying that the statute is intended to protect mortgagors and be construed in their favor. *Id.* at 47, 196 N.W.2d at 475.

After the first unsuccessful lift-stay action on a $2,603.07 arrearage, Midwest claimed $2,414.73 in attorney's fees. After the Oleiskys filed Chapter 7, another unsuccessful lift-stay action was based on the same grounds, i.e., inadequate security, *plus* failure to pay attorney's fees in the first unsuccessful proceedings. Although Midwest did not prevail in the second lift-stay, it added an additional $657.49 in attorney's fees.

Further, Midwest refused to accept payments on the mortgage after January 1985 unless $3,072.18 in attorney's fees was also paid *in full.* The notice of foreclosure also demanded all of the attorney's fees to be paid *in full before reinstatement of the mortgage would be allowed.*

The majority's opinion will allow a lender to make a unilateral determination of the "reasonableness" of the action taken to "protect lender's interest" and a unilateral determination of the amount of its fees to be paid in full as a condition precedent to a homeowner's statutory right for reinstatement pursuant to Minn.Stat. § 580.30. This allowance effectively denies the homeowner the right to reinstate by attempting to exact additional substantial fees from an already financially-distressed homeowner.

In essence, this decision subjects homeowners who hold mortgages to the vagaries and whims of financial institutions by allowing mortgagees to unilaterally add attorney's fees and costs to a mortgage foreclosure without due process of law. This prevents the homeowner from paying arrearages and reinstating the mortgage, a protection guaranteed by law pursuant to Minn.Stat. § 580.30.

The purpose of the legislative scheme is to ensure proper protection to the unwary, unsophisticated homeowner who is facing a mortgage foreclosure. The Oleiskys, by seeking their legal remedies under bankruptcy, were deprived of their homestead by a series of unilateral decisions of Midwest in contravention to statute. To penalize a homeowner who has financial difficulties from seeking protection under the bankruptcy law is contrary to law.

B. The Minnesota Supreme Court has indicated clearly and unequivocally its position on protection of homeowner's rights. In *Jadwin*, 318 N.W.2d 844, the supreme court affirmed the district court on the grounds that where the language in the mortgage goes beyond a statutory authorization, it will be narrowly construed.

> Where a contractual provision for attorney fees is clearly authorized by statute, the meaning and intent of the parties as expressed in the specific language of the mortgage should be controlling * * *. Here, however, the language in the mortgage goes beyond the statutory authorization. The bank did not seek foreclosure in this action; it requested and obtained only a determination of priority vis-a-vis Kump's mechanics lien. While this would arguably fall within the covenant language "incurred * * * for the protection of the lien of this mortgage," it falls outside the statutory provision. The agreement of the parties cannot be enforced in this instance because, as we hold *infra*, the bank is not a prevailing party in this action and considerations of public policy militate against awarding attorney fees to a nonprevailing party.

*Id.* at 848. Here, the two lift-stay actions brought neither a judgment nor any other favorable results for Midwest. Accordingly, the award of attorney's fees is inappropriate.

## VI.

### Conclusion

Foreclosure by advertisement is a harsh remedy. Strict application of the law is necessary to prevent abuse and to discourage illegal conduct which often goes undetected due to the consumer's lack of knowl-

edge. How many other foreclosures were subject to illegal attorney's fees which were paid or homes were lost through inability to reinstate the mortgage? How many can afford legal counsel, particularly when already in desperate financial straits? We should not and cannot strip homeowners of protection from unfair and unjust mortgage foreclosures mandated by the legislature for their protection.

A. In this case, I would hold that the trial court erred as a matter of law that the lift-stay actions were needed or necessary to protect lender's interest in the property, since no credible evidence was offered to justify such a finding and, in fact, the contrary was true and admitted by Midwest.

B. I would find, as a matter of law, that any attorney's fees and costs, in addition to those allowed by Minn.Stat. § 583.01, cannot be unilaterally added to the notice of intent to foreclose pursuant to statute and, if added, the foreclosure is void.

Accordingly, for either or both of the above, I would void the foreclosure.