John F. POLE, Petitioner, Respondent,

v.

James R. TRUDEAU, Sheriff of Washington County, Minn., et al., Defendants,

Collateral Acquisition Corporation, Appellant.

No. C1–93–2291.

Court of Appeals of Minnesota.

May 17, 1994.

---

Richard M. Carlson, Brian G. Hoelscher, Minneapolis, for appellant.

Michael C. Fleming, White Bear Lake, for respondent.

George Kuprian, Stillwater, for defendant.

Considered and decided by HARTEN, P.J., and PETERSON and STONE,* JJ.

## OPINION

HARTEN, Judge.

Respondent John F. Pole attempted to redeem from the first of two foreclosures of the same mortgage, but the sheriff refused his tender. Pole then sought mandamus to compel the sheriff to accept his redemption. The district court ruled that appellant Collateral Acquisition Corporation (CAC) had inappropriately attempted to cancel the first foreclosure without a judicial proceeding. The district court ordered the sheriff to accept Pole's redemption. We affirm.

## FACTS

In 1987, Gerald F. and Gail M. Oestreich mortgaged their homestead to Meritor Credit Corp. for $152,000. The Oestreichs' homestead was then worth at least $250,000. The Oestreichs operated their business, Republic Products, Corp., on the mortgaged property. In 1989, the Oestreichs gave a second mortgage on the property to Associates Industrial Loan Co. (Industrial).

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-
pointment pursuant to Minn. Const. art. VI, § 10.

In July 1992, Industrial foreclosed its junior mortgage and purchased the property, subject to the Meritor mortgage. A month later, Meritor assigned its senior mortgage to Ford Consumer Finance Co. (Ford). In September 1992, Ford initiated proceedings to foreclose the Meritor mortgage. Ford, however, did not serve Republic with notice of the foreclosure. Although the Oestreichs owed about $183,000 on the Meritor mortgage when Ford foreclosed it in November 1992, Ford bought the property at the foreclosure sale for only $127,500. The redemption period for the November 1992 foreclosure expired in May 1993.

On January 8, the Oestreichs' friend, Pole, lent them $35,000 and the Oestreichs redeemed the property from the Industrial mortgage. To secure his loan, Pole received a mortgage on the property and a $45,000 note at 11 percent interest. When Pole took his mortgage, he was aware of the Oestreichs' defaults on the Meritor and Industrial mortgages. Pole also knew that the Meritor mortgage was in default in excess of $170,000 and that Ford had purchased the property for $127,500; he was sufficiently familiar with the property to believe that it contained enough equity to satisfy both the Meritor mortgage and his mortgage.

On January 11, 1993, Pole, as a junior creditor, signed a notice of intent to redeem the property. On January 14, Ford assigned its interest in the property to CAC for $120,000. CAC knew that the property had been sold at the November 1992 foreclosure sale for $127,500. On January 21, 1993, CAC unilaterally executed a document purportedly canceling the November 1992 foreclosure on grounds that Ford had not notified Republic of the foreclosure of the Meritor mortgage and because Ford's bid at the ·November 1992 foreclosure was erroneously low. CAC notified the Oestreichs, Pole, and Republic that it intended to reforeclose the Meritor mortgage.

On March 31, the sheriff reforeclosed the Meritor mortgage and CAC purchased the property for $185,968.99. In an April 22 letter, Pole's attorney informed CAC's attorney that if the Oestreichs did not redeem the property from the November 1992 foreclosure ("first foreclosure"), Pole would, and that he would do so at the $127,500 amount bid at the first foreclosure. By letter of May 5, CAC's attorney warned the sheriff that Pole would attempt to redeem the property from the purportedly invalid first foreclosure and stated that the redemption attempt should be rejected.

The Oestreichs did not redeem the property and on May 10, Pole attempted to redeem the property from the first foreclosure. The sheriff refused Pole's tender. A week later, Pole petitioned the district court for mandamus to compel the sheriff to accept the tender or explain why he did not do so. The district court held a hearing on June 4 and a factual stipulation approved by counsel for Pole, CAC, the sheriff, and the Oestreichs, was filed on June 22. In a September 3 order, the district court ruled that: (a) court action was required to invalidate the November 1992 foreclosure sale; (b) CAC had not initiated an action; (c) the district court could not restore the status quo; and (d) mandamus was appropriate because Pole had no other legal remedy.

## ISSUE

Did the district court err by determining that Pole was entitled to mandamus to compel the sheriff to accept his redemption tender?

## ANALYSIS

### I.

■ Generally,

[m]andamus will lie to compel the performance of a duty which the law clearly and positively requires. Mandamus may issue against a public officer only to compel a ministerial act and not when the officer has discretion with respect to the act in question.

*Tyo v. Ilse*, 380 N.W.2d 895, 897 (Minn.App. 1986) (citations omitted); *see* Minn.Stat. § 586.01 (1992). Mandamus will not issue if the petitioner has an adequate remedy at law. Minn.Stat. § 586.02 (1992).

On appeal, a district court's order on an application for mandamus will be reversed

only where there is no evidence reasonably tending to sustain the district court's findings.

*Popp v. County of Winona*, 430 N.W.2d 19, 22 (Minn.App.1988), *pet. for rev. denied* (Minn. Nov. 23, 1988). This court, however, need not defer to the ultimate conclusions drawn by the district court. *Id.*

■ A sheriff has a clear and positive duty to accept a properly tendered redemption. *See* Minn.Stat. §§ 580.25 (1992) (person may redeem from sheriff); 580.26 (1992) (person from whom redemption is made "shall" deliver to redeeming person a redemption certificate); 645.44, subd. 16 (1992) (" '[s]hall' is mandatory"); *Graybow–Daniels Co. v. Pinotti*, 255 N.W.2d 405 (Minn.1977) (mandamus issued to compel sheriff to accept redemption). Here, because the parties stipulated that Pole "fulfilled all of the statutory requirements * * * to redeem" from the first foreclosure, the sheriff was required to accept Pole's redemption unless CAC properly invalidated the first foreclosure.[1]

## A. Judicial Determination is Needed to Set Aside a Foreclosure.

■ The parties dispute whether the holder of a mortgage who believes the mortgage was improperly foreclosed and who wishes to conduct a second foreclosure may unilaterally invalidate the first foreclosure without court action.

### 1. Statute.

By statute, a foreclosure sale shall not be held invalid for defects in either notice of the sale or the sale itself

unless *the action* in which the validity of such sale is called into question be commenced, or the defense alleging its invalidity be *interposed*, with reasonable diligence, and not later than five years after the date of such sale.

Minn.Stat. § 580.20 (1992) (emphasis added); *see* Minn.Stat. § 580.21 (1992) (generally,

foreclosures will not be invalidated unless "the action" questioning the foreclosure's validity or in which the defense to the foreclosure is "interposed" occurs within 15 years of the sale). Both statutes refer to "the action" in which the foreclosure's validity is questioned or the defense to the foreclosure is "interposed" and limit the time during which such proceedings may occur. Thus, both statutes contemplate that foreclosures are set aside in judicial proceedings. CAC, however, did not initiate an action to set aside the first foreclosure.

### 2. Common Practice.

Despite Minn.Stat. §§ 580.20, .21, CAC argues that it is "common practice" for mortgage holders to unilaterally set aside allegedly invalid foreclosures. Such a "common practice," if it exists, allegedly would be sufficient to allow CAC to unilaterally set aside the first foreclosure. The stipulated facts upon which this case was decided, however, do not address whether "common practice" allows a mortgage holder to unilaterally set aside an allegedly invalid foreclosure. Moreover, Pole denies the existence of such a "common practice." Accordingly, we conclude that the district court did not err in rejecting CAC's "common practice" argument.

### 3. Case Law.

CAC alleges that it is proper for mortgage holders to unilaterally set aside foreclosure sales under *Romkey v. Saumweber*, 170 Minn. 438, 212 N.W. 816 (1927). We disagree. In *Romkey*, the supreme court affirmed the district court's grant of the mortgagee's request "that the foreclosure be vacated, the mortgage reinstated and again foreclosed." *Id.* at 439, 212 N.W. at 816. Thus, in *Romkey*, the mortgagee sought and obtained a judicial determination which set aside the first foreclosure.

■ CAC also argues that its allegations in the mandamus proceeding were a request

---

**1.** CAC argues that mandamus cannot issue because there were two foreclosures and any redemption would require the sheriff to exercise discretion in determining the foreclosure from which redemption would be allowed. Either CAC did, or did not, properly invalidate the first

foreclosure. In either case, however, only one of the foreclosures is valid. Thus, to adopt CAC's argument is to conclude that the sheriff has discretion to determine which foreclosure was valid.

that the foreclosure be set aside. *See* Minn. Stat. § 580.20 (requiring that a defense to a foreclosure sale be "interposed" within five years). The court considers four equities when determining whether to set aside a foreclosure:

(1) A blameless plaintiff fallen into serious error * * *, which promises a disastrous result, wholly unintended by any of the parties to the transaction * * *; (2) absence of negligence of the person seeking relief; (3) defendants with knowledge of the mistake attempting to secure by inequitable conduct an unconscionable advantage of plaintiff and to enrich themselves unjustly at his expense; [and] (4) the ability of the court to restore the status quo as to all of the interests involved.

*Peterson v. First Nat'l Bank of Ceylon*, 162 Minn. 369, 379, 203 N.W. 53, 56–57 (1925); *see TCF Banking & Savings v. Loft Homes*, 439 N.W.2d 735, 738 (Minn.App.1989) (applying *Peterson* ), *pet. for rev. denied* (Minn. June 21 and July 12, 1989).

For purposes of analysis only, we assume that CAC's allegations in the mandamus proceeding constitute a request to set aside the foreclosure. We conclude, however, that CAC failed to satisfy the *Peterson* test for several reasons: (a) the stipulation does not establish that Ford's bid at the first foreclosure was a mistake; (b) because CAC knowingly purchased Ford's interest in the property for $120,000 and Pole must pay $127,500 to redeem, CAC's $7,500 profit is not a "disaster" under *Peterson, see Peterson*, 162 Minn. at 371, 203 N.W. at 54 (foreclosure invalidated where an erroneous bid would allow redemption of a $15,000 property for $835.50); (c) because Ford's bid may not have been a mistake, it is unclear that Pole was aware of Ford's "mistake;" (d) the stipulation does not establish that Pole's conduct was inequitable; and (e) assuming Pole will be unjustly enriched, because CAC will earn a $7,500 profit even if the first mortgage is not set aside, it is not clear that Pole's enrichment occurs at CAC's "expense."

The district court also stated that it lacked the ability to restore the status quo. Two factors are "critical" in evaluating a court's ability to restore the status quo—whether a party has relied to its detriment upon the foreclosure, and the "subsequently acquired rights of a third party." *Loft Homes*, 439 N.W.2d at 739. Here, although Pole acquired rights in the property after foreclosure, because both Pole and CAC appear to seek a *windfall*, it is not clear that either "detrimentally" relied on the first foreclosure.

### B. *Equity.*

■ CAC alleges that Pole's loan to the Oestreichs is usurious and that Pole and Oestreichs are conspiring to allow Oestreichs to avoid paying the full amount of the Meritor loan. Therefore, CAC argues, Pole's unclean hands preclude the issuance of mandamus. *See Alevizos v. Metropolitan Airports Comm'n*, 298 Minn. 471, 494, 216 N.W.2d 651, 665 (1974) (because mandamus is an equitable remedy, "equitable defenses are available"). But CAC cannot assert Oestreichs' usury defense. *See Drew v. Skeena Lumber Co.*, 180 Minn. 358, 363, 230 N.W. 819, 821 (1930) (usury may be asserted by a borrower or a borrower's sureties). Also, the stipulated facts upon which the case was decided do not address a conspiracy.

### C. *Adequate Remedy at Law.*

■ CAC argues that mandamus was inappropriate because Pole had other remedies at law. CAC alleges that Pole could have initiated a declaratory action or sought an injunction before the second foreclosure, and could have, and still might be able to, challenge the second foreclosure under Minn. Stat. § 580.20. CAC's argument assumes the validity of the second foreclosure, which presupposes that the first foreclosure was properly set aside. The first foreclosure, however, was not properly set aside.

### D. *Efficiency.*

■ CAC argues that because Republic will eventually object to the first foreclosure, judicial efficiency requires the foreclosure to be set aside now. Whether the Oestreichs, who own Republic, will cause a future Republic objection to the foreclosure is speculative. Also, as the district court has not addressed Republic's (as yet unmade) objection, we can-

not review a ruling that the district court may never make. *See generally Thompson v. Town of Berlin*, 87 Minn. 7, 91 N.W. 25 (1902) (addressing claim of inadequate service on holder of subordinate interests where the superior interest holder was served); *Farm Credit Bank of St. Paul v. Kohnen*, 494 N.W.2d 44 (Minn.App.1992) (same), *pet. for rev. denied* (Minn. Feb. 25, 1993).

## II.

CAC also alleges that it is entitled to interest on the redemption for the period between the sheriff's refusal of Pole's original tender and the sheriff's ultimate acceptance of Pole's tender under the writ of mandamus. This argument was not specifically made to the district court. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) (issues may not be raised for the first time on appeal and a party may not argue an issue to an appellate court on a theory not present-

ed to the district court). Moreover, CAC makes no compelling argument that justice requires us to address this claim. *See* Minn. R.Civ.App.P. 103.04 (appellate court may address any issue as justice requires). Therefore, we do not address it.

## DECISION

Because the first foreclosure was not properly set aside, we affirm the district court's issuance of mandamus to compel the sheriff to accept Pole's redemption tender.

**Affirmed.**