# United States Court of Appeals
## For the Eighth Circuit
_____

No. 24-3312
_____

Sandra K. Fiecke-Stifter, on behalf of themselves and all others similarly situated; Estate of Doris M. Fasching, the, by and through Personal Representative Sandra Fiecke-Stifter, on behalf of themselves and all others similarly situated

*Plaintiffs - Appellants*

v.

MidCountry Bank; Taft Stettinius & Hollister LLP

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 21, 2025
Filed: March 23, 2026
_____

Before COLLOTON, Chief Judge, LOKEN and BENTON, Circuit Judges.
_____

BENTON, Circuit Judge.

Sandra K. Fiecke-Stifter sued MidCountry Bank and its attorney Taft Stettinius & Hollister LLP, alleging, as relevant, that MidCountry violated the Truth in Lending Act (TILA), 15 U.S.C. § 1639f(a), and Taft violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692f(6)(A). The district court dismissed both claims. *See **Fiecke-Stifter v. Taft Stettinius & Hollister LLP**, 753*

F. Supp. 3d 756, 764 (D. Minn. 2024). Having jurisdiction under 28 U.S.C. § 1291, this court affirms in part, and reverses and remands in part.

**I.**

According to the pleadings, Doris M. Fasching and Harold N. Fasching executed a mortgage with MidCountry Bank in December 1998 for their home in Hutchinson, Minnesota. At the time of their deaths in 2021, the mortgage was current. Their interest transferred to their heirs, including Fiecke-Stifter, who did not make any payment in September or November 2021 and made only a partial payment—less than the required minimum—in October 2021.

In November 2021, MidCountry sent Fiecke-Stifter a loan statement showing a payment due for $1,640.62 on December 26—which included all past-due amounts. She paid $562.35 on December 6 and $1,640.62 on December 29. Later, on December 29, she called MidCountry; they confirmed that her payments were current.

The December statement showed a payment due of $533.92 on January 26, 2022. Fiecke-Stifter did not make any payment in January. The January statement showed a payment due of $1,619.59 on February 26—which included all past-due amounts.

On February 1, MidCountry began a nonjudicial foreclosure—which Fiecke-Stifter received notice of on February 18—based on her failure to make timely monthly payments. For the foreclosure, MidCountry retained Taft Stettinius & Hollister LLP.

On February 22, Fiecke-Stifter paid $1,067.84—equaling two monthly payments but not including any late fees. Although the foreclosure had begun, MidCountry sent a February statement showing a payment due of $1,079.41 on March 26.

On March 24, MidCountry refunded $2,708.46—equal to the last two payments made on December 29 and February 22. Later, on March 24, MidCountry sent a past-due notice for $2,778.45 (including late fees) stating it could be disregarded if the payment had been made.

On or around March 31, 2022, Fiecke-Stifter allegedly requested a "payoff" amount for the loan, saying she had the financial resources to pay it. A Taft attorney acknowledged the request, indicated it was valid, and agreed to provide the amount. The payoff amount was never sent. The loan balance then was $58,722.49.

A week after the request, the property sold at a sheriff's auction on April 7, 2022, for $76,000.00. On June 9, Fiecke-Stifter redeemed the property for $77,159.29. She alleges that the difference between the last statement's loan balance ($58,722.49) and the redemption amount ($77,159.29) includes late charges. She also claims that the redemption amount was about $75,000.00 more than the payoff amount she requested on or around March 31 (and never received).

Fiecke-Stifter sued, alleging, as relevant, that MidCountry violated TILA by crediting and later refunding her December and February payments, causing late fees. She alleged that Taft violated the FDCPA by foreclosing when MidCountry lacked a present right to possession. The district court dismissed the TILA claim on the pleadings. After allowing an amendment to the FDCPA claim, the district court dismissed it. Fiecke-Stifter appeals.

"When evaluating a motion for judgment on the pleadings, a court must accept as true all factual allegations set out in the complaint, and must construe the complaint in the light most favorable to the plaintiff, drawing all inferences in his favor." *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006). "Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." *Id.* This court reviews the district court's decision de novo. *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to state a claim to relief that is plausible on its face." ***Ashcroft v. Iqbal***, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." ***Id.*** "In analyzing a motion to dismiss, a court must accept the allegations contained in the complaint as true and make all reasonable inferences in favor of the nonmoving party." ***Martin v. Iowa***, 752 F.3d 725, 727 (8th Cir. 2014). "This court reviews de novo a 12(b)(6) dismissal." ***Ringhofer v. Mayo Clinic***, 102 F.4th 894, 898 (8th Cir. 2024).

## II.

TILA section 1639f(a) provides: "In connection with a consumer credit transaction secured by a consumer's principal dwelling, no servicer shall fail to credit a payment to the consumer's loan account as of the date of receipt . . . ." Fiecke-Stifter claims that MidCountry violated section 1639f(a) by initially crediting her payments, refunding them, and then assessing late fees.[1] She believes that a servicer cannot credit a payment and then return it.

Fiecke-Stifter's argument fails. The plain language of section 1639f(a) does not prohibit a servicer from returning payments; rather, it prohibits the delayed crediting of payments (which would generate late fees then). *See* ***Fridman v. NYCP Mortgage Co.***, 780 F.3d 773, 780 (7th Cir. 2015) ("The opportunity (and perhaps even incentive) to delay the crediting of accounts explains TILA's 'date of receipt' requirement. Reading TILA to require mortgage servicers to credit electronic authorizations when they are received protects consumers from this unwarranted— and possibly limit-less—delay.").

---

[1]The district court concluded that Fiecke-Stifter failed to allege that the reversal of the crediting caused her to incur late fees. This court need not address whether the complaint adequately alleged causation. *See generally* ***Martin***, 752 F.3d at 727.

Fiecke-Stifter focuses on the phrase "as of," citing *United States v. Munro-Van Helms Co.*, 243 F.2d 10, 13 (5th Cir. 1957), for the definition: "'As of' means 'as if it were.'" This definition is incomplete because "as of" in section 1639f(a) refers to the earliest possible date to credit a payment, not when the servicer processes it. *See **Fridman***, 780 F.3d at 779. As the district court said:

> [Fiecke-Stifter] does not allege that MidCountry failed to credit the account for those payments as of the date of receipt. . . . It is difficult to understand how the allegation that a creditor or servicer improperly returned a payment that originally was credited in compliance with § 1639f(a) shows a violation of § 1639f(a). . . . [Fiecke-Stifter's] alleged harms all resulted from what she alleges was a wrongful foreclosure. . . . Sandra cites no factually similar case or other authority to support this claim.

Contrary to Fiecke-Stifter's assertion about the next subsection of TILA, the plain language does not define the verb "credit." *See* **15 U.S.C. § 1639f(b)** ("If a servicer specifies in writing requirements for the consumer to follow in making payments, but accepts a payment that does not conform to the requirements, the servicer shall credit the payment as of 5 days after receipt."). This court thus interprets TILA by its ordinary meaning. "Credit" is: "the obligation due on accounting between parties to transactions." ***Propper v. Clark***, 337 U.S. 472, 480 (1949) (stating the "ordinary meaning" of "credit"). *See also Credit*, **Black's Law Dictionary** (12th ed. 2024) ("Credit" means: "To enter (as an amount) on the credit side of an account."); *Credit*, **Merriam-Webster's Unabridged Dictionary**, https://unabridged.merriam-webster.com/unabridged/credit (last visited Jan. 21, 2026) ("Credit" means: "[A]n entry on the right-hand side of an account constituting an addition to a revenue, net worth, or liability account.").

Fiecke-Stifter adds restrictions to the statute that do not exist. *See **United States v. Wounded Knee***, 596 F.2d 790, 794 (8th Cir. 1979) ("Congress expresses its purpose by words. It is for [courts] to ascertain neither to add nor to subtract, neither to delete nor to distort."), *quoting **62 Cases, More or Less, Each Containing Six Jars of Jam v. United States***, 340 U.S. 593, 596 (1951).

-5-

Fiecke-Stifter failed to plead a viable TILA claim. The district court properly granted judgment on the pleadings.

## III.

After the foreclosure proceedings had begun, but before the property was sold, Fiecke-Stifter's attorney allegedly requested the amount necessary to pay off the mortgage. Taft promised to provide the payoff amount, but it was never provided. Fiecke-Stifter alleges she sent a letter to Taft stating that she had the financial resources to pay off the loan—a plausible assertion due to the recent return of her payments and her post-sale redemption of the property. Taft allegedly never responded to the requests but proceeded with the sale one week later. According to Fiecke-Stifter, these allegations show that MidCountry lacked a present right to possession until Taft replied to her requests, and thus violated the FDCPA.

FDCPA section 1692f(6)(A) prohibits a security-interest enforcer from taking "any nonjudicial action" to dispossess property without a "present right to possession" of the property claimed as collateral through an enforceable security interest. *See Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 473–76, 478 (2019) (recognizing that a law firm enforcing a mortgage in nonjudicial foreclosure proceedings—a "security-interest enforcer"—is subject to the specific prohibitions in § 1692f(6), without precisely deciding what conduct violates § 1692f(6)).

Because the FDCPA does not define a present right to possession, this court looks to state law to determine whether the security-interest enforcer had that right at the time of taking any action to foreclose. *See Clarin v. Minn. Repossessors, Inc.*, 198 F.3d 661, 664–65 (8th Cir. 1999); *Richards v. PAR, Inc.*, 954 F.3d 965, 968 (7th Cir. 2020) (stating that repossession rights are governed by the relevant state's property and contract law).

The statute governing the reinstatement of a mortgage after foreclosure proceedings have begun, but before the sale of the property, is Minnesota statute

section 580.30.  *See First Tr. Co. v. Leibman*, 445 N.W.2d 547, 549 (Minn. 1989).

The last four sentences of section 580.30, subdivision 1 provide:

> The holder of a mortgage shall inform the mortgagor of the amount necessary to reinstate the mortgage within three days of receipt of a request for a reinstatement amount from the mortgagor.  If the amount necessary to reinstate the mortgage was not mailed to the mortgagor within three days of receipt of the request, no liability accrues to the party foreclosing the mortgage or the party's attorney and the foreclosure is not invalidated if the mortgage reinstatement amount was mailed by first class mail to the mortgagor at least three days prior to the date of the completed sheriff's sale.  Notwithstanding any law to the contrary, the holder of a mortgage has no obligation to delay or postpone a foreclosure sale upon receipt of a request for a reinstatement amount when that request was made less than three days prior to the sale.  The reinstatement amount provided is effective for a period of seven days after the holder of the mortgage provides it to the mortgagor or until the foreclosure sale, whichever occurs first.

**Minn. Stat. § 580.30, subd. 1**.  The Minnesota legislature enacted these four sentences in 2015 as the dominant centerpiece of an act to clarify the law of foreclosure sales.  **Act of Sept. 29, 2015, 2015 Minn. Laws ch. 13 (S.F. 1444)**.  By the 2015 amendment, as relevant here, the mortgage-holder must, if requested, tell the mortgagor the reinstatement amount at least three days before the sale.  **§ 580.30, subd. 1**.

For a century, the opening sentence of section 580.30, subdivision 1, has given the mortgagor the right—"at any time before the sale"—to pay the delinquent amount (plus other statutory costs).  **Id.**; *see Davis v. Davis*, 196 N.W.2d 473, 475 (Minn. 1972) (reinstatement requires payment of "only what was delinquent, plus the costs set out in the statute, without requiring the accelerated principal to be tendered").  If that amount is paid, "the mortgage shall be fully reinstated and further proceedings in such foreclosure shall be thereupon abandoned."  **§ 580.30, subd. 1**.  A reinstatement removes the default, ends the foreclosure proceedings, and

-7-

"restore[s] both mortgagor and mortgagee to the status quo ante." ***Davis***, 196 N.W.2d at 475.

This outcome reflects the statute's purpose: "to afford the vendee an opportunity to save and reinstate his equitable rights by removing the default." ***Id.***, *quoting **Needles v. Keys***, 184 N.W. 33 (Minn. 1921). "[T]he mortgagor's right to reinstate is absolute . . . and the statute is intended to protect mortgagors and be construed in their favor." ***Oleisky v. Midwest Fed. Sav. & Loan Ass'n of Minneapolis***, 398 N.W.2d 627, 634–35 (Minn. Ct. App. 1986) (summarizing the *Davis* opinion).

Taft emphasizes another statute, section 580.02, that lists the "requisites" for foreclosure that "entitle" MidCountry to make a foreclosure. *See* **Minn. Stat. § 580.02**. Taft argues that despite any failure to comply with the reinstatement statute, compliance with section 580.02 establishes a present right to possession throughout the foreclosure proceeding. *See **Ruiz v. 1st Fiduciary Loan Servicing, LLC***, 829 N.W.2d 53, 57 (Minn. 2013) (requiring section 580.02's "conditions be met" in order to foreclose, or the "right to proceed" "is suspended"); ***Adlinger v. Close***, 201 N.W. 625, 626 (Minn. 1925) (holding that section 580.02's conditions must exist when "the first step is taken in the foreclosure" or the sale "is suspended").

Citing *Clarin*, Fiecke-Stifter argues that Taft's alleged failure to provide the reinstatement amount suspended MidCountry's right to possession until at least three days after Taft or MidCountry gave notice of the reinstatement amount. *See **Clarin***, 198 F.3d at 664. Because the notice was allegedly never given, Fiecke-Stifter concludes that Taft's continuing actions to foreclose, without a present right to possession, violate section 1692f(6)(A). *Clarin* held that there was no violation of the FDCPA because the car repossession company in that case committed no breach of the peace and maintained a present right to possession. *See **id.*** at 665. This court has not addressed in *Clarin* or elsewhere whether a repossession company's breach of the peace (or violation of a foreclosure statute) *would* suspend a present right to possession under Minnesota law. *Compare **Hansen v. Santander Bank***, 689 F.

Supp. 3d 679, 688 (D. Minn. 2023), *with* ***Akerlund v. TCF Nat'l Bank***, No. 99-1537, 2001 WL 1631440, at \*6 (D. Minn. June 11, 2001).

The district court predicted that the Minnesota Supreme Court would hold that the alleged violation of section 580.30, subdivision 1, would void the foreclosure, but the district court ruled that a void foreclosure does not equate to the absence of a present right to possession. *See* ***Fiecke-Stifter***, 753 F. Supp. 3d at 764; ***Radel v. Plath***, 1989 WL 17598, at \*2 (Minn. Ct. App. Mar. 7, 1989) (unpublished, not precedential) (setting aside the foreclosure where servicer demanded an excessive payoff amount under section 580.30). Taft adds that Fiecke-Stifter never brought a state action to void the foreclosure based on an alleged violation of section 580.30. *See* ***Pole v. Trudeau***, 516 N.W.2d 217, 220 (Minn. Ct. App. 1994) (Minnesota "foreclosures are set aside in judicial proceedings"). That is true, although we must consider that Fiecke Stifter is not bringing a wrongful-foreclosure claim, but a claim under the FDCPA where the word "present" in section 1692f(6)(A) measures the right to possession at the specific time a security-interest enforcer takes "any" action to foreclose.

The district court was properly concerned whether almost any violation of the Minnesota foreclosure statutes might violate section 1692f(6)(A). *See generally* ***Jackson v. Mortg. Elec. Registration Sys., Inc.***, 770 N.W.2d 487, 494 (Minn. 2009) ("We require a foreclosing party to 'show exact compliance' with the terms of the statutes . . . . If the foreclosing party fails to strictly comply with the statutory requirements, the foreclosure proceeding is void."), *quoting* ***Moore v. Carlson***, 128 N.W. 578, 579 (Minn. 1910); ***Carlson v. First Revenue Assurance***, 359 F.3d 1015, 1018 (8th Cir. 2004) (noting that the FDCPA generally "was not meant to convert every violation of a state debt collection law into a federal violation").

The district court, however, stopped with its concern about converting a state violation into a federal violation. The issue here is whether the alleged violation of the reinstatement statute is also a violation of section 1692f(6)(A) of the FDCPA. The district court did not address whether Minnesota's reinstatement statute, which

requires timely notice about the mortgagor's absolute right to vacate the first requisite for a nonjudicial foreclosure—"default in a condition of such mortgage," **§ 580.02(1)**—is distinguishable from other violations of the Minnesota foreclosure statute for purposes of a "present right to possession" and the FDCPA. The issue was not adequately briefed in the district court, and it is a question of state law best addressed by the district court in the first instance.

\* \* \* \* \* \* \*

For these reasons, we affirm the judgment in part, vacate the judgment dismissing the FDCPA claim, and remand the case for further proceedings consistent with this opinion.

_____