GILBERT J. WILKES v. W. R. HOAGLUND, COMMISSIONER OF PUBLIC SAFETY, AND ANOTHER.

196 N. W. 2d 475.

April 7, 1972—Nos. 43212, 43254.

---

*Clinton W. Wyant,* for relator below.

*Warren Spannaus,* Attorney General, and *Frederick S. Suhler, Jr.,* Special Assistant Attorney General, for respondents below.

Heard before Knutson, C. J., and Murphy, Otis, and Peterson, JJ.

PER CURIAM.

Appeals by both parties from an order of the district court conditionally reversing an order of the commissioner of public safety discharging from service a highway patrolman. The appeals raise issues as to whether the findings and order of the commissioner are supported by the record and the more important question of whether, in proceedings by certiorari pursuant to Minn. St. 299D.03, subd. 11, the district court may modify an administrative order in lieu of affirming or reversing the same.

The employee, Gilbert J. Wilkes, was a member of the Minnesota Highway Patrol for 8½ years prior to his dismissal. He was charged with neglect of duty [1] based on his failing to report for certain assigned duties in the Aitkin County area. Pursuant to Minn. St. 299D.03, subd. 10,[2] a hearing on the charge was held, after which the commissioner

---

[1] Minn. St. 299D.03, subd. 8, provides in part: "Causes for suspension, demotion, or discharge shall be:

\* \* \* \* \*

"(2) Neglect of duty or wilful violation or disobedience of orders or rules."

[2] Minn. St. 299D.03, subd. 10, provides: "The commissioner or his designated subordinate shall have power to compel the attendance of witnesses at any such hearing and to examine them under oath, and to require the production of books, papers, and other evidence at any such hearing, and for that purpose may issue subpoenas and cause the same to be served and executed in any part of the state. The employee accused shall be entitled to be confronted with the witnesses against him and have an opportunity to cross-examine the same and to introduce at such hearing testimony in his own behalf, and to be represented by counsel at such hearing. If the hearing is conducted by a designated subordinate of the commissioner such designated subordinate upon completion of the hearing shall forthwith transmit a transcript of the testimony of the hearing, together with his recommendations, to the

determined that the employee's conduct constituted neglect of duty warranting dismissal. There is no dispute about the facts. In his order, the commissioner concluded:

"That Officer Wilkes did not report for his assigned duty as a Minnesota Highway Patrol Officer on October 26 and 27, 1970.

"That Officer Wilkes did not report for his assigned duty October 28, 1970, until some two hours after the start of his shift, only after a direct order to report was given by his supervisor in the Brainerd Highway Patrol District Headquarters.

"That Officer Wilkes did not have a reasonable excuse for his failure to report for his assigned duty October 26 and 27, 1970; and his late reporting for assigned duty October 28, 1970.

"That the excuse Officer Wilkes gave for failure to report for assigned duty on October 26, 27 and 28, 1970; namely, that he thought the 26th and 27th were days off and the 28th he was to start at a later hour do not jibe with his daily reports (Exhibits 11, 12 and 13) claiming he had in fact worked.

"That it is inconceivable that an Officer could make out a Daily Report showing the day's activity including the number of miles traveled, speedometer readings at the beginning and end of the day, number of drivers license checked and area and type of work performed without intending to convey the impression that he had in fact performed the work, travel and activities reflected in said Daily Report.

"That the conduct of Officer Wilkes on October 26-28, 1970, is Neglect of Duty as the same is set out in M.S. (1969) Sec. 299D.03, subd. 8(2).

"IT IS THEREFORE ORDERED that Patrolman Gilbert Wilkes be DISCHARGED as a member of the Minnesota Highway Patrol, and that such discharge be effective January 6, 1971."

On certiorari,[3] the district court determined that the action of the

___

commissioner. The commissioner, within 25 days after such hearing, shall render his decision in writing and file the same in his office. If after such hearing he finds that any such charge made against such state employee is true, he may punish the offending party by reprimand, suspension without pay, demotion, or dismissal."

[3] Minn. St. 299D.03, subd. 11, provides in part: "Any state highway patrolman who is so suspended, demoted, or dismissed may have such decision or determination of the commissioner reviewed by a writ of certiorari in the district court of the county where such patrolman resides. If such decision or determination of the commissioner shall be finally rejected or modified by the court, the patrolman shall be rein-

commissioner "was unreasonable and discriminatory, and is hereby conditionally reversed and the [patrolman], if he so elects, be reinstated to his duties as of July 15, 1971, unless at the pleasure of the Commissioner he is directed to report earlier." It is apparent that the court was persuaded that the action of the commissioner was unreasonably harsh, and his memorandum accompanying the order indicates that his object was to invite the commissioner to revise his decision or to accept the court's order, which would "in effect subject such patrolman to a four month period of suspension without pay, which may or may not in his discretion be sufficient in the premises."

The facts in this case are similar to those dealt with in Webster v. Marshall, 270 Minn. 292, 133 N. W. 2d 533 (1965), where the commissioner dismissed a highway patrolman because he continued in his employment as a part-time truckdriver for more than a year after all members of the highway patrol had been notified that driving a truck as outside employment was prohibited and after a specific rescission of his previous permission to accept such employment. The trial court found the commissioner's action to be arbitrary and unreasonable and directed that the employee should be suspended without pay for a 5-month period and thereafter reinstated. We reversed the trial court and sustained the holding of the commissioner to the effect that the conscious violation of the rule by the employee afforded a legal and substantial basis to dismiss him from the patrol force. The issues bearing upon the authority vested in the commissioner, and the nature and extent of the discretion which he may exercise in disciplinary matters, are fully discussed and the decisions relating thereto are gathered in Webster v. Marshall, *supra*. We noted that, notwithstanding the statute's apparent grant to the court of authority to "modify" decisions of the commissioner, the exercise of such authority by the court in substituting its judgment for that of the commissioner "in matters relating to administrative policy collides with the provisions of the constitution dealing with the division of governmental powers. Minn. Const. art. 3, § 1 [citing cases]." 270 Minn. 295, 133 N. W. 2d 535. We further observed (270 Minn. 296, 133 N. W. 2d 536):

"* * * [A]s judges, we are not privileged or competent to assess the need for the punishment which is appropriate in particular situations.

---

stated in his position, and the commissioner shall pay to the patrolman so suspended out of the funds of the state the salary or wages withheld from him pending the determination of the charges or as may be directed by the court."

The responsibility for enforcing regulations and maintaining morale is that of the commissioner, and, as we have suggested, it may well be that stern measures were long overdue. Necessarily, the commissioner must be cloaked with wide discretion, and the fact we may not agree with his handling of the matter does not divest him of the right to exercise the authority conferred on him by the statute so long as his decision is not patently arbitrary, unreasonable, and capricious."

While we can appreciate the trial court's feeling that the penalty imposed was indeed severe, we cannot say, on the basis of the record, that the commissioner's determination should be disturbed. The employee's failure to report for duty for a period of 2½ days is compounded by the false or incorrect statements in his workbook that he actually had performed his functions and duties during that period. He admits the breaches found by the commissioner. The commissioner did not have to accept as true his statement that his failure to report for duty resulted from confusion as to work schedules and that his entry of false or incorrect data as to miles traveled, speedometer readings, and work performed was the result of an honest mistake.

We are controlled by what we have already said in Webster v. Marshall, *supra,* and conclude that the record reasonably supports the commissioner's decision.

Reversed.