**FIRST TRUST COMPANY, INC. (formerly known as First Trust Company of St. Paul), as Trustee Under an Indenture of Trust dated as of December 1, 1979, Between the City of St. Paul, Minnesota, acting by and through its Housing and Redevelopment Authority and such Trustee, petitioner, Appellant,**

v.

**Robert H. LEIBMAN, et. al.,
Defendants,**

**Kenneth E. Keate, Respondent.**

**No. C6–88–1168.**

Supreme Court of Minnesota.

Sept. 15, 1989.

---

5. At the time of the appeal appellant was being treated for his mental illness at the Moose Lake State Hospital.

**548**

Timothy Paul Brausen, Minneapolis, for appellant.

Yaeger & Yaeger, Don C. Aldrich, Minneapolis, for Leibman.

Bryan Jamison, St. Paul, for Keate.

WAHL, Justice.

This case, involving foreclosure on a home mortgage, requires us to construe Minn.Stat. § 580.30 (1988) to clarify what payments are required to reinstate a mortgage prior to judicial sale of the property. First Trust Company ("First Trust"), the mortgagee, appeals a decision of the court of appeals, affirming a trial court holding that the mortgagor, Kenneth E. Keate, need tender only the amount due at the time of the commencement of the foreclosure proceedings 430 N.W.2d 257. Because we conclude that the statute allows a mortgage to be reinstated by payment of the amount actually due at the time of the tender, plus interest on the delinquent payments from the due date to the date of tender and statutory costs, we reverse on this issue.

The mortgage at issue in this proceeding was given June 3, 1981, by defendant Robert H. Leibman to First Grand Avenue State Bank of Saint Paul on the property located at 1805 Iglehart, St. Paul, and assigned the same date to First Trust. On November 25, 1981, Leibman sold the property by contract for deed to Keate, the respondent here, and Thomas G. Kohls. Keate and Kohls agreed, in the contract for deed they signed, to assume and to pay the mortgage held by First Trust. While no separate agreement between First Trust and the purchasers appears to have been executed, First Trust has treated respondent Keate as the mortgagor, commencing two foreclosure proceedings against him prior to the present action, the first in 1983, the second in 1985. In both instances, Keate reinstated the mortgage by paying all amounts due at the time of reinstatement. This action arises from a default in May 1986.

First Trust filed a complaint for mortgage foreclosure on December 17, 1986, and a motion for summary judgment on November 6, 1987. On March 8, 1988, the Ramsey County District Court granted judgment in the amount of $67,827.86 plus attorney fees, costs and disbursements against Keate and Kohls, dismissed their counterclaims with prejudice and ordered the property sold to satisfy the judgment.

After the entry of judgment, Keate attempted to reinstate the mortgage by tendering $12,723.63 on March 20, 1988, though he was aware that only full payment would be accepted, as his previous offers of partial payment had been rejected. First Trust rejected the tender as insufficient, calculating that $16,081.82 was owed on the mortgage. Keate then sought an amendment and clarification of the judgment to specify the sum required to reinstate the mortgage. A second judge vacated the prior judgment as to Keate, and clarified the judgment amount by specifying the sums to be allocated to principal, interest, taxes and insurance, disbursements and attorney fees. The court then established the amount necessary to reinstate the mortgage as $12,034.00, based on the amount actually due at the commencement of foreclosure proceedings, plus statutorily allowed costs and interest, not including abstracting costs. The court further held the March 20 tender was sufficient to reinstate the mortgage and de-

creased the amount upon which costs and interest were computed.

Both parties appealed. The court of appeals affirmed the amended judgment in favor of Keate, holding that Minn.Stat. § 580.30 unambiguously provided for reinstatement of the mortgage when the amount due at the commencement of foreclosure proceedings was tendered. The court of appeals also reinstated Keate's personal liability for the mortgage, and upheld the assessment of costs in the award.

First Trust filed a timely petition for further review with this court, raising only the issue of the meaning of the "amount actually due" under Minn.Stat. § 580.30. Keate filed a late response to the petition for review asking the court to accept the late response and grant appellant's petition and raising four additional issues to be considered. We granted First Trust's petition for further review and permitted the late response.

The sole issue properly before this court is whether the amount necessary to reinstate a mortgage under Minn.Stat. § 580.30 is calculated at the commencement of foreclosure proceedings or at the time of tender.[1] As this is a purely legal question, this court is not bound by the decision of the lower court. *A.J. Chromy Constr. Co. v. Commercial Mechanical Serv., Inc.*, 260 N.W.2d 579 (Minn.1977). Interpretation of a statute, however, is governed by Minn. Stat. ch. 645 (1988).

The statute which governs the reinstatement of a mortgage after foreclosure proceedings have begun, but before a judicial sale of the property provides:

> In any proceeding for the foreclosure of a real estate mortgage, whether by action or by advertisement, if at any time before the sale of the premises under such foreclosure *the mortgagor*, the owner, or any holder of any subsequent

encumbrance or lien, or any one for them, *shall pay* or cause to be paid to the holder of the mortgage so being foreclosed, or to the attorney foreclosing the same, or to the sheriff of the county, *the amount actually due thereon and constituting the default actually existing in the conditions of the mortgage at the time of the commencement of the foreclosure proceedings*, including insurance, delinquent taxes, if any, upon the premises, interest to date of payment, cost of publication and services of the process or notices, attorney's fees not exceeding $150 or one-half of the attorney's fees authorized by section 582.01, whichever is greater, together with other lawful disbursements necessarily incurred in connection with the proceedings by the party foreclosing, then, and in that event, the mortgage shall be fully reinstated and further proceedings in such foreclosure shall be thereupon abandoned.

Minn.Stat. § 580.30 (1988) (emphasis added).

The dispute centers around the interpretation of the phrase "the amount actually due thereon and constituting the default actually existing in the conditions of the mortgage at the time of the commencement of the foreclosure proceedings." First Trust contends the phrase contains two separate clauses, and "the time of commencement of foreclosure proceedings" applies only to the conditions of the mortgage which are in default. Keate argues the time limitation applies unambiguously to the whole clause, and claims that only those payments which were unpaid at the start of foreclosure proceedings in December 1986 must be paid. In Keate's view, First Trust has no right to collect for any installments unpaid between December

---

1. We do not address the four issues raised by Keate which were not properly presented in a timely petition for review, as required by Rule 117 of the Minnesota Rules of Civil Appellate Procedure (1988). As indicated by Rule 117, review of any decision of the court of appeals is discretionary with the Supreme Court. In exercising this discretion, we may review all issues we see as necessary to decide the case, however presented, but need not review issues belatedly presented by a party. This court will not review issues improperly presented by a respondent in an untimely response to a petition for review, which issues are not necessary to the disposition of this case.

1986 and the time the mortgage is reinstated at some time after this litigation.

First Trust argues that, if a mortgagor is permitted to reinstate a mortgage by only paying that amount due at the commencement of the foreclosure proceedings, an endless treadmill of litigation will result. Each time the mortgagor reinstates the mortgage, the mortgagor will still be in arrears. The mortgagee will still be deprived of the benefit of its bargain in that the mortgagor will not have paid all amounts due under the contract. The mortgagee may then commence a new proceeding, at the conclusion of which the mortgagor will still be in default. First Trust also argues that adopting Keate's construction would have adverse effects on the supply and cost of mortgage money for Minnesota home buyers. Mortgage bankers depend on access to national secondary mortgage markets to obtain capital to make mortgage loans, and loans made in Minnesota are purchased and sold as mortgage securities. Any ruling that mortgagors need never be current in their mortgage payments will decrease the value of those loans as securities, and will result in their not being sold in the secondary market. Decreased access to national capital markets will make it more difficult to obtain funds for mortgages and will drive up the interest rate charged. In this regard, First Trust notes that the legislature intends to favor the public interest as against any private interest. Minn.Stat. § 645.17(5).

Keate, on the other hand, takes the position that § 580.30 allows reinstatement of the mortgage by payment of the amount due at the commencement of the foreclosure proceeding, and suspends the intervening periodic payments. Keate argues that, after reinstatement, the mortgage must still be paid in full by its due date. He would have the principal payments redistributed throughout the repayment period, resulting in more interest paid, since the outstanding principal is higher, with a balloon payment at the end of the repayment period. Where there is no final due date, Keate argues, the repayment period is simply extended.

Keate also claims that because the language of the statute is unambiguous, the court cannot look to the results obtained by various interpretations of the statute. To do so, Keate claims, would directly contradict the requirements of Minn.Stat. § 645.16 (1988), which states "[w]hen the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit."

It is for us to look at the language of the statute in question to determine whether it is "clear and free from all ambiguity." The language to be reviewed is "the amount actually due thereon and constituting the default actually existing in the conditions of the mortgage at the time of the commencement of the foreclosure proceedings." The conditions of a mortgage, we note, include not only the debt, but also additional requirements, such as payment of taxes, or maintaining insurance on the property. As noted by one commentator, the right of a lender to foreclose a mortgage begins upon default either in the debt or in a condition of the mortgage. 10 G. Thompson, *Real Property*, Liens § 5125, at 203 (1957). The language of the mortgage statute may be read two ways: either as specifying the amount due at the commencement of foreclosure proceedings; or as indicating the conditions which were in default at the commencement of proceedings. Both interpretations are grammatically plausible. Section 580.30 is ambiguous and must be interpreted in accordance with the dictates of Minn.Stat. ch. 645.

The leading case interpreting Minn.Stat. § 580.30 is *Davis v. Davis*, 293 Minn. 44, 196 N.W.2d 473 (1972). In *Davis* this court addressed the effect of an acceleration clause on the reinstatement of a mortgage under § 580.30. We noted that the statute was adopted in 1923 as a response to depressed economic conditions. We also quoted language from an earlier case which interpreted a predecessor statute, stating:

While the statute must be given full effect, its provisions must be construed in the light of the legislative purpose to afford the vendee an opportunity to save and reinstate his equitable rights by removing the default, and, if the meaning be doubtful, that construction must be adopted which militates against a forfeiture.

293 Minn. at 47, 196 N.W.2d at 475 (citing *Needles v. Keys*, 149 Minn. 477, 184 N.W. 33 (1921)).

Applying the reasoning of *Needles*, *Davis* concluded that the vendee need only pay the "delinquent payments as distinguished from amounts which otherwise would not actually be due but are rendered due by the mortgagee's invoking his acceleration clause." *Id.* at 47–48, 196 N.W.2d at 475. The court also noted the statute included provisions "to restore both mortgagor and mortgagee to the status quo ante."

The mortgagee is made whole by the requirement that the mortgagor pay not only what is in default in principal and interest, but in addition insurance, taxes, publication costs, costs of service, and attorney's fees * * *. These expenses would appear to be sufficient to deter and discourage mortgagors from assuming a casual attitude toward defaults and delinquencies.

*Id.* at 48, 196 N.W.2d 475.

While in *Davis*, we interpreted "the amount actually due" and "the default actually existing" to mean all payments delinquent at the time of the tender, the remainder of the phrase, "in the conditions of the mortgage at the time of the commencement of the foreclosure proceedings," was not challenged and therefore not included in the interpretation. Thus, in the case before us, we should perhaps look to see which construction of the statute would operate against forfeiture. Payment of the current debt may be difficult, but paying only the amount due at the commencement of the foreclosure proceedings would leave the debt in arrears. Thus, the mortgagee must commence new foreclosure proceedings to collect the arrearage.[2]

In the short run, Keate's construction does militate against forfeiture, at least until the balloon payment is due. Such a construction, however, would create an incentive for mortgagors to default, since the obligation to pay principal and interest would be suspended during the pendency of foreclosure proceedings, however long they may take. This case has been pending for over two and one-half years, during which Keate, as mortgagor, has made no payments at all. The costs considered in *Davis* to deter default do not and can not deter if the mortgagor can halt all payments for an extended period of time. The incentive to default is even greater if there is no final due date specified in the mortgage contract; under Keate's interpretation of the statute, the term of the mortgage is simply extended.

The legislature cannot have intended to allow debtors to unilaterally modify the terms of their debt simply by defaulting. Lenders do not provide loans on that basis, and to allow such restructuring would interfere with their legitimate contractual expectations and deprive them of the benefit of their bargain.

The result of such a construction can only be that mortgage money will become more difficult to obtain and more expensive, through higher interest rates. "The extent to which a creditor is willing to lend money upon security is determined in part upon the interest received and in part upon the ease with which the creditor can realize upon the security to satisfy a defaulted debt. If there are to be extensive costs and delays involved in the foreclosure accompanied with danger of deterioration in value of the security the amount the creditor is willing to lend decreases." 9 G. Thompson, *Real Property*, Mortgages

2. Respondent Keate argues that upon payment of the amount owing at the commencement of foreclosure proceedings, the statute requires "further proceedings in such foreclosure shall be thereupon abandoned," meaning that no action may be taken to obtain the amounts which came due during the pendency of foreclosure proceedings. We address this argument in full, *infra*, and only say here that this interpretation of the statute strikes us as being far-fetched.

§ 4650, at 2–3 (1958). Lenders would also move more swiftly to foreclose on delinquent payments and to sell the property more quickly. Such a result would neither benefit the mortgagor nor "militate against foreclosure." We therefore hold that to reinstate a mortgage under Minn.Stat. § 580.30, the mortgagor must pay all amounts actually due upon the mortgage at the time of the tender, plus interest on the delinquent payments from the due date to the date of tender and statutory costs.[3] We reverse the holding of the court of appeals and the trial court to the contrary.

Reversed in part.

COYNE, J., specially concurs.

COYNE, Justice (concurring specially).

Although I readily concur in the conclusion reached by the majority—that a mortgagor must cure the default which prompted foreclosure by bringing it into a condition current as of the time of reinstatement—I am of the opinion that Minn.Stat. § 580.30 (1988) is susceptible of no more than the single, clear and unambiguous interpretation which this court adopted in *Davis v. Davis*, 293 Minn. 44, 46–47, 196 N.W.2d 473, 474–75 (1972).

The mortgagee in the present case, like the mortgagee in *Davis*, exercised its option to accelerate the principal balance of $57,014.61, declaring the entire sum due and payable immediately. The general rule is that exercise of the acceleration option brings the mortgage to maturity for all purposes so that neither party can thereafter treat the mortgage as not matured without the consent of the other. In *Davis* we recognized that Minn.Stat. § 580.30 had been enacted to relieve the mortgagor of the obligation to satisfy the mortgage in its entirety in order to retain the mortgagor's interest in the mortgaged property, and we held that the statute permits the mortgage to be "reinstated" by the payment of a lesser sum:

> We are of the opinion and hold that the use of the words "actually due" and "the default actually existing" was intended by the legislature to permit reinstatement by payment of only what was delinquent, plus the costs set out in the statute, without requiring the accelerated principal to be tendered.

*Davis*, 293 Minn. at 46–47, 196 N.W.2d at 474–75.

The necessity of a tender sufficient to bring the mortgage into a current condition as of the date of tender appears to have been accepted without question for approximately 65 years—no doubt because a mortgage can be "fully reinstated" only if the delinquency which allowed acceleration of the principal balance be fully cured. "Reinstate" means "to restore to a proper condition: replace in an original or equivalent state." *Webster's Third New International Dictionary* 1915 (1981). It cannot be said, it seems to me, that a mortgage has been restored to a proper condition or that it has been replaced in its original state, if at the moment of reinstatement the principal payments provided by the debtor's note and mortgage are more than two years in arrears. Even the respondent mortgagor concedes that a mortgage may not be in default on reinstatement, although his contention that principal installments which have become delinquent since initiation of foreclosure are simply shifted into a balloon payable at maturity strikes me as friv-

---

**3.** This interpretation is consistent with the language of the statute. The amount due to be paid to reinstate the mortgage is that which is "actually due," which we have said is the amount owing at the time of reinstatement tender. The default to be corrected, however, is only the one which existed "at the time of the commencement of proceeding," and not any subsequently occurring default. Thus, for example, a lender may commence foreclosure proceedings because principal and interest payments were not paid. After the commencement of proceedings, if the mortgagor then failed to keep the premises in good repair, or committed waste upon the property, those failures to maintain the conditions of the mortgage could not be included in the action already commenced. Only those conditions which were in default at the commencement of the proceeding may be charged against the mortgagor upon reinstatement. Such failure of other conditions which occurred during the pendency of the proceedings could be the basis for another foreclosure action. This allows the mortgagor time to correct additional defaults, while not allowing such defaults to go permanently uncorrected.

olous. Accordingly, I do not think the phrase, "in the conditions of the mortgage at the time of the commencement of the foreclosure proceedings," introduces any ambiguity into the statute. Neither does it seem necessary to look for a construction of the statute which "would operate against a forfeiture." Foreclosure of a mortgage does not involve a forfeiture as does termination of a contract for deed pursuant to Minn.Stat. § 559.21 (1988), for a mortgagor is entitled to any surplus realized from the foreclosure sale. Minn.Stat. § 581.06 (1988); *Perkins v. Stewart,* 75 Minn. 21, 25, 77 N.W. 434, 435 (1898). In my judgment the principle underlying the *Davis* court's recognition of the statutory purpose—"to restore both mortgagor and mortgagee to the status quo ante"—and impact—"[t]he mortgagee is made whole by the requirement that the mortgagor pay not only what *is* in default in principal and interest, but in addition insurance, taxes, publication costs, costs of service, and attorney's fees, now increased to $150"—is both applicable to and dispositive of the question before us in this case. *Davis,* 293 Minn. at 48, 196 N.W.2d at 475 (emphasis added).

I agree too that this court may review any question it elects to consider in the decision of a case but that a party does not raise an issue by presentation in a response to a petition for further review. It may, however, be useful to point out that the Minnesota Rules of Civil Appellate Procedure do not provide for the filing of a notice of review or its equivalent in response to a petition for further review. A petition for further review is the only vehicle available for requesting review of any particular issue. As a practical matter, even though a party is not aggrieved by a decision of the court of appeals, it may be necessary to file what is commonly known as a "therapeutic" petition for further review; that is, a petition to be considered by this court only in the event the adversary petitions for further review.