*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1950**

Boundary Waters Bank,
Respondent,

vs.

William H. McGaughey,
Appellant,

Lian Y. McGaughey,
Defendant.

**Filed April 11, 2016
Affirmed
Kirk, Judge**

Hennepin County District Court
File No. 27-CV-15-1090

Kelly S. Hadac, Julie N. Nagorski, HKM, P.A., St. Paul, Minnesota (for respondent)

William H. McGaughey, Minneapolis, Minnesota (pro se appellant)

Considered and decided by Kirk, Presiding Judge; Johnson, Judge; and Smith, John, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**KIRK**, Judge

In this real-property-foreclosure action, appellant challenges the district court's award of contractual-attorney fees to respondent. We affirm.

## FACTS

In November 2007, appellant William McGaughey and his then-wife, defendant Lian Y. McGaughey, borrowed $182,000 in exchange for a promissory note and a mortgage that encumbered real property in Minneapolis. In December 2014, respondent Boundary Waters Bank (BWB) acquired the lender's interest in the note and the mortgage. The note obligated McGaughey to make monthly payments on the loan balance until it was paid in full and identified the failure to make a monthly payment as a default.

By signing the note and mortgage, McGaughey agreed that, in the event of continued default after notice, the lender had the right to require immediate payment of the outstanding balance and sell the property. If the lender called the balance due, both the terms of the note and the mortgage allowed the lender to recover expenses incurred in enforcement, including reasonable attorney fees. Further, McGaughey agreed that he could reinstate the mortgage after default and acceleration only if, among other things, he paid "all expenses incurred in enforcing [the mortgage], including, but not limited to, reasonable attorney[] fees."

In August 2014, McGaughey stopped paying the monthly installments due under the note and defaulted on the mortgage. After BWB provided McGaughey with notice of the defaults and McGaughey failed to cure, BWB initiated this foreclosure action.

2

In April 2015, BWB moved for summary judgment. McGaughey filed a pro se motion opposing summary judgment, which prompted BWB to file a reply and McGaughey to file a reply to BWB's reply. McGaughey asserted that there were genuine issues of material fact regarding the following issues: (1) the legal description of the property subject to the mortgage did "not pertain to any property owned by [McGaughey]"; (2) the lot was "unbuildable" under city code; and (3) there was uncertainty about whether BWB intended to obtain a judgment against both McGaughey and his ex-wife.

After a motion hearing in May, the district court denied BWB's motion for summary judgment. It found that the sole genuine issue of material fact was whether McGaughey owned all of the property subject to the mortgage. It also denied BWB's claim for attorney fees because it failed to submit support under Minn. Gen. R. Pract. 119.02.

In June, BWB filed a second motion for summary judgment. BWB's supporting documents provided clear evidence that McGaughey owned all of the property subject to the mortgage. McGaughey again submitted a motion opposing the motion for summary judgment. Although he admitted that he owned all of the property described in the mortgage, he reiterated his other two arguments against summary judgment.

At the motion hearing in July, the parties reached a resolution of all claims except BWB's claim for attorney fees. Under the terms of the settlement, McGaughey paid BWB $19,886.88 to cure his defaults, and, in exchange, BWB agreed to dismiss the action following resolution of the attorney-fees issue. The district court issued an order memorializing the settlement and directing that, if the parties did not reach a resolution on

attorney fees, BWB needed to file a motion for the fees by September 7, or the matter would be dismissed.

On September 3, BWB filed a motion for attorney fees in the amount of $21,519.55, which McGaughey opposed. The district court issued an order granting BWB attorney fees in the amount of $14,726.

This appeal follows.

## D E C I S I O N

**I.      Minn. Stat. § 580.30 (2014) does not limit the amount of attorney fees that a mortgagee can recover from the mortgagor in a foreclosure action when the mortgage is reinstated.**

In Minnesota, attorney fees "are not recoverable in litigation unless there is a specific contract permitting or a statute authorizing such recovery." *Dunn v. Nat'l Beverage Corp.*, 745 N.W.2d 549, 554 (Minn. 2008). We generally review an award of attorney fees for an abuse of discretion. *Carlson v. SALA Architects, Inc.*, 732 N.W.2d 324, 331 (Minn. App. 2007), *review denied* (Minn. Aug. 21, 2007). However, we review issues of statutory construction de novo. *Hous. & Redev. Auth. of Duluth v. Lee*, 852 N.W.2d 683, 690 (Minn. 2014).

"The threshold issue in any statutory interpretation analysis is whether the statute's language is ambiguous." *State v. Peck*, 773 N.W.2d 768, 772 (Minn. 2009). When a statute is unambiguous, we give statutory words and phrases their plain and ordinary meaning. *Id.*; Minn. Stat. § 645.16 (2014) (stating that, where there is no ambiguity, "the letter of the law shall not be disregarded under the pretext of pursuing the spirit"). If the language is ambiguous, we apply the canons of construction to ascertain the legislative intent. *Staab*

4

*v. Diocese of St. Cloud*, 853 N.W.2d 713, 718 (Minn. 2014). Statutory words and phrases are ambiguous if they are susceptible to more than one reasonable interpretation. *Peck*, 773 N.W.2d at 772.

Minn. Stat. § 580.30, subd. 1, provides, in pertinent part:

> In any proceedings for the foreclosure of a real estate mortgage . . . if at any time before the sale of the premises under such foreclosure the mortgagor . . . shall pay or cause to be paid to the holder of the mortgage so being foreclosed . . . the amount actually due thereon and constituting the default actually existing in the conditions of the mortgage at the time of the commencement of the foreclosure proceedings, including insurance, delinquent taxes, if any, upon the premises, interest to date of payment, cost of publication and services of process or notices, *attorney[] fees not exceeding $150 or one-half of the attorney[] fees authorized by section 582.01, whichever is greater* . . . then, and in that event, the mortgage shall be fully reinstated and further proceedings in such foreclosure shall be thereupon abandoned.

(Emphasis added.)

In a foreclosure by action, Minn. Stat. § 582.01, subd. 2, provides that "[t]he court shall establish the amount of the attorney[] fee[s]." McGaughey argues that Minn. Stat. § 580.30, subd. 1, limits the amount of attorney fees that the district court could have awarded to one-half of the amount of reasonable fees found by the district court, which is $7,363. We disagree.

First, the plain language of Minn. Stat. § 580.30, subd. 1, unambiguously provides the amount of attorney fees that must be paid in order to reinstate a mortgage that is subject to foreclosure proceedings. It does not state that these are the *only* fees that may be awarded

5

and certainly does not suggest that it precludes award of any additional fees available under contract.

Second, even if the language were ambiguous, caselaw and the canons of construction do not lead us to conclude that the legislature intended McGaughey's interpretation of the statute. In *First Trust Co. v. Leibman*, 445 N.W.2d 547, 551-52 (Minn. 1989), the supreme court concluded that reinstatement of a mortgage under Minn. Stat. § 580.30, subd. 1, requires payment of the amount actually due upon the mortgage at the time of tender, plus interest and statutory costs, rather than the amount due when the foreclosure proceedings commenced. It explained that,

> [The opposite] construction . . . would create an incentive for mortgagors to default, since the obligation to pay principal and interest would be suspended during the pendency of foreclosure proceedings, however long they may take. . . .
>
> The legislature cannot have intended to allow debtors to unilaterally modify the terms of their debt simply by defaulting. Lenders do not provide loans on that basis, and to allow such restructuring would interfere with their legitimate contractual expectations and deprive them of the benefit of their bargain.

*Leibman*, 445 N.W.2d at 551. The supreme court further reasoned that "[t]he result of such a construction can only be that mortgage money will become more difficult to obtain and more expensive, through higher interest rates." *Id.* Similarly, interpreting Minn. Stat. § 580.30, subd. 1, to preclude any additional attorney fees incurred in enforcing the terms of the note and mortgage would interfere with lenders' contractual rights and potentially discourage lenders from facilitating reinstatements. *See Davis v. Davis*, 293 Minn. 44, 47-48, 196 N.W.2d 473, 475 (1972) (in interpreting Minn. Stat. § 580.30, subd. 1, applying

principle favoring reinstatement of mortgagor's equitable rights); Minn. Stat. § 645.16(6) (2014) (directing consideration of "the consequences of a particular [statutory] interpretation").

Further, in *Irwin v. Surdyk's Liquor*, 599 N.W.2d 132, 142 (Minn. 1999), the supreme court held that a statutory maximum on an attorney-fees award is unconstitutional as a violation of the doctrine of separation of powers when there is no final judicial review of the award. *But see David v. Bartel Enters. (Nitro Green)*, 856 N.W.2d 271, 277 (Minn. 2014) (as a matter of comity, recognizing the workers' compensation statutory-attorney-fees formula as presumptively reasonable, and that, absent exceptional circumstances, further judicial review of an award consistent with the formula is unnecessary). Therefore, even if the language of Minn. Stat. § 580.30, subd. 1, indicated that only statutory-attorney fees are available where a mortgage is reinstated, the district court would maintain an ability to consider a higher award.

## II. The district court did not abuse its discretion in awarding attorney fees to BWB.

In determining "the reasonable value of the legal services," the district court should consider "all relevant circumstances." *State v. Paulson*, 290 Minn. 371, 373, 188 N.W.2d 424, 426 (1971). The circumstances informing a district court's "determination of reasonableness include the time and labor required; the nature and difficulty of the responsibility assumed; the amount involved and the results obtained; the fees customarily charged for similar legal services; the experience, reputation, and ability of counsel; and the fee arrangement existing between counsel and the client." *Green v. BMW of N. Am.,*

7

*LLC*, 826 N.W.2d 530, 536 (Minn. 2013) (quotations omitted). Further, when the claims in a suit "involve a common core of facts or will be based on related legal theories," the district court should not deny attorney fees related to unsuccessful claims because "[m]uch of counsel's time will be devoted generally to the litigation as a whole." *Musicland Grp., Inc. v. Ceridian Corp.*, 508 N.W.2d 524, 535 (Minn. App. 1993) (quotation omitted), *review denied* (Minn. Jan. 27, 1994).

The district court found that there was "a sufficient basis for the recovery of attorney fees under the terms of the [n]ote and [m]ortgage," and that the affidavit of BWB's counsel contained "descriptions demonstrat[ing] that the work was necessary for enforcement of the [n]ote and [m]ortgage." It concluded that, although "the costs, fees, and work performed through the first summary judgment [motion were] reasonable and appropriate," those associated with the second motion for summary judgment were not because BWB "had the factual information require[d] to" prove that the property was in fact covered by the mortgage at the time of the first motion, but failed to do so. Therefore, in awarding attorney fees and costs, it subtracted the $6,628 in attorney fees and $165.55 in costs associated with the second motion for summary judgment from the total amount requested by BWB.

McGaughey challenges the reasonableness of attorney fees related to: (1) bringing the first motion for summary judgment; (2) responding to his opposition to that motion; and (3) moving for attorney fees. These fees total $10,825.

McGaughey asserts that the fees imposed were unreasonable because: (1) BWB refused to negotiate with him prior to commencing the action; (2) BWB would have known

8

about his expected future ability to reinstate the mortgage had it inquired; (3) the summary-judgment process did not afford him the time necessary to raise money to reinstate the mortgage; (4) he had a right to a trial; (5) there were genuine issues of material fact preventing summary judgment; (6) the first motion for summary judgment was unsuccessful; (7) BWB's failure to include the motion for attorney fees with the second motion for summary judgment unreasonably increased the amount of fees; (8) its attorney-billing rates were unreasonable in light of the work involved and the quality of the representation; and (9) the fees were excessive relative to the amount at issue.

After thorough review of the record and the district court's findings, it is evident that the district court did not abuse its discretion in awarding contractual-attorney fees to BWB. *See Carlson*, 732 N.W.2d at 331. As stated by the district court, BWB was not obligated to negotiate with McGaughey before commencing a foreclosure action. Likewise, BWB had no obligation to inquire as to his ability to reinstate the mortgage prior to moving for summary judgment or to delay the motion to extend his time to reinstate the mortgage. *See* Minn. R. Civ. P. 56. McGaughey's trial rights also did not preclude BWB's summary-judgment motion. *Id.*

Contrary to McGaughey's assertion, BWB's first motion for summary judgment was largely successful. The district court made clear that it would have granted summary judgment but for the genuine issue of material fact regarding his ownership of all of the real property named in the mortgage. It is undisputed that BWB submitted evidence resolving that issue in support of its second motion for summary judgment. In light of these circumstances, it was reasonable and soundly within the district court's discretion to

9

account for the deficiency in BWB's first motion by denying fees and costs associated with the second motion for summary judgment. *Carlson*, 732 N.W.2d at 331. Disallowing fees related to the first motion for essentially the same reason would unreasonably doubly punish a single deficiency and ignore other work reasonably performed to further BWB's interests in the litigation.

There is no evidence that BWB's failure to properly move for attorney fees prior to September 2015 increased the fees incurred in so moving. Indeed, at the time of the second motion for summary judgment, it was not clear that such a motion would be necessary. It was within the district court's discretion to award attorney fees related to submitting the motion for fees, as these were incurred in pursuing its rights under the note and mortgage.

In support of his assertion that BWB's attorneys charged excessive rates for the quality of work performed, McGaughey points to a 2011 survey of the rates charged at Twin Cities law firms. However, this survey is not in the record. The only evidence of the reasonableness of the rates was submitted by BWB's counsel, which supported both the rates and the total fees charged. In light of McGaughey's extensive responses to the litigation, the principal amount owed on the note, the experience of the attorneys, and the results ultimately obtained, the district court did not abuse its discretion in finding the work related to the fees awarded to be reasonable.

**Affirmed.**